IN RE DISQUALIFICATION OF GIESLER.

IN RE M.N. ET AL.

[Cite as *In re Disqualification of Giesler,* 135 Ohio St.3d 1201,

2011-Ohio-7083.]

*Judges—Affidavit of disqualification—R.C. 2701.03—Request for removal denied—No basis established warranting disqualification.*

(No. 11-AP-083—Decided September 13, 2011.)

ON AFFIDAVIT OF DISQUALIFICATION in Ottawa County Court of Common Pleas, Juvenile Division, Case Nos. 20930097, 20930098, and 20930099.

_____

**O'CONNOR, C.J.**

{¶ 1} Loretta Riddle, counsel for J.N., the biological mother of the minor children at issue in the underlying case, has filed an affidavit with the clerk of this court under R.C. 2701.03 to disqualify Judge Kathleen L. Giesler from acting on any further proceedings in the above-referenced cases, now pending in the Juvenile Division of the Court of Common Pleas of Ottawa County.

{¶ 2} Attorney Riddle contends that Judge Giesler must be disqualified because she presides over the HOPE Court. In 2008, the Ottawa County Juvenile Court created its Family Dependency Treatment Court, a specialized docket known as the HOPE ("Helping Our Parents Excel") Court, with financial assistance and ongoing administrative support from the Supreme Court of Ohio. The HOPE Court is designed to help parents who have substance-abuse problems and have had children removed from their care. Attorney Riddle alleges that Judge Giesler's participation in the HOPE Court program creates a conflict of interest leading to bias against her client. Riddle claims that, through her participation in HOPE Court, Judge Giesler has engaged in improper ex parte

communications with parties and witnesses, thereby creating an appearance of impropriety.

{¶ 3} Judge Giesler has responded in writing to the concerns raised in the affidavit. The judge explains that J.N. entered the HOPE Court program in February 2010 but was removed from the program in November 2010, after being sanctioned numerous times for failing to abide by the court's treatment orders. Judge Giesler denies harboring any bias or prejudice against J.N. and maintains that no party gained any advantage from her participation in HOPE Court.

{¶ 4} For the reasons to follow, no basis has been established for ordering the disqualification of Judge Giesler.

Relevant Facts

{¶ 5} On December 29, 2009, J.N. was arrested for child endangerment after two of her children, ages one and two, were found wandering outside the home while J.N. was passed out on the couch. On December 30, 2009, the Ottawa County Department of Job and Family Services ("Family Services") filed a complaint charging that J.N.'s minor children were neglected and dependent. All three of J.N.'s children were removed from her home and placed in temporary custody. On January 13, 2010, J.N. admitted that the allegations of dependency were true, and the allegations pertaining to neglect were withdrawn.

{¶ 6} J.N. voluntarily entered HOPE Court in February 2010. During J.N.'s time in the HOPE Court program, Judge Giesler participated regularly in J.N.'s treatment-team meetings. J.N. also routinely appeared before the judge to review her progress during the first two stages of the program. The trial court, however, terminated J.N. from HOPE Court in December 2010, after sanctioning her several times for failing to abide by the court's treatment orders.

{¶ 7} On January 25, 2011, J.N. agreed that legal custody of the children should be awarded to M.Y., J.N.'s former aunt by marriage. On April 28, 2011,

Judge Giesler denied M.Y. legal custody, but instead ordered that the children remain in M.Y.'s temporary custody pending a review hearing on May 31, 2011.

{¶ 8} On June 3, 2011, Family Services moved the trial court to award legal custody to M.Y. On or around June 30, 2011, Riddle filed a motion to return the children to J.N. and to award J.N. legal and residential custody. According to Riddle, the trial court held hearings on these motions on July 1 and August 2, 2011, with a final hearing set for August 23, 2011. Riddle filed the instant affidavit of disqualification on August 15, eight days before the final hearing.

### Alleged Improper Ex Parte Communications

{¶ 9} Attorney Riddle first claims that Judge Giesler must be disqualified because she engaged in improper ex parte communications with the parties and certain witnesses while presiding over J.N.'s HOPE Court program. Attorney Riddle, however, overlooks the fact that Jud.Cond.R. 2.9(A)(6) states that a judge may engage in ex parte communications "when administering a specialized docket, provided the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage while in the specialized docket program as a result of the ex parte communication." Judge Giesler states that no party gained any advantage as a result of J.N.'s participation in the HOPE Court specialized docket, and Riddle has offered no evidence to the contrary. In this regard, Riddle makes blanket assertions that Judge Giesler was exposed to prejudicial information about J.N. (1) outside of J.N.'s presence and (2) without J.N.'s being afforded counsel. But Jud.Cond.R. 2.9 contemplates that when administering a specialized docket, judges will assume a more interactive role with parties, treatment providers, probation officers, social workers, and others. In addition, the record in this case reflects that J.N. was represented by counsel throughout the underlying proceedings, and J.N. agreed to participate in HOPE

Court. If she had questions or concerns about the program, she should have discussed them with counsel before entering the program.

Alleged Violations of Constitutional Rights/Improper Legal Rulings

**{¶ 10}** Riddle also claims that her client's constitutional rights were violated. She further complains that Judge Giesler admitted prejudicial testimony about her client over Riddle's objections. But it is well settled that an affidavit of disqualification is not the mechanism for determining whether a judge has violated a party's constitutional rights. *See In re Disqualification of Griffin*, 101 Ohio St.3d 1219, 2003-Ohio-7356, 803 N.E.2d 820, ¶ 8-9. Likewise, Riddle's challenges to the judge's evidentiary rulings and other legal decisions are not evidence of bias or prejudice. *In re Disqualification of Floyd*, 101 Ohio St.3d 1217, 2003-Ohio-7351, 803 N.E.2d 818, ¶ 4 (counsel's disagreement or dissatisfaction with a court's legal rulings, even if those rulings may be erroneous, is not grounds for disqualification); *In re Disqualification of Solovan*, 100 Ohio St.3d 1214, 2003-Ohio-5484, 798 N.E.2d 3, ¶ 4 (an affidavit of disqualification "is not a vehicle to contest matters of substantive or procedural law"). The matters that Riddle complains of here fall within the sound discretion of the trial judge. If Riddle wishes to challenge these discretionary rulings, she may do so by way of appeal. But reviewing alleged legal errors is not the chief justice's role in deciding an affidavit of disqualification. *In re Disqualification of Russo*, 110 Ohio St.3d 1208, 2005-Ohio-7146, 850 N.E.2d 713, ¶ 6.

Conclusion

**{¶ 11}** "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George,* 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Those presumptions have not been overcome in this case.

**{¶ 12}** For the reasons stated above, the affidavit of disqualification is denied.  The case may proceed before Judge Giesler.

—————————————